## John Morris Co. v. Southworth.

1. RES IPSA LOQUITUR—*It Speaks for Itself.*—*Res Ipsa Loquitur* is a saying applicable to a great variety of circumstances.

2. RES IPSA LOQUITUR—*The Application of the Rule.*—Appellant occupied a building as tenant of appellee. By the explosion of a boiler the building was rendered useless and untenantable until repaired. Appellant made the repairs and sought to offset them against the rent, the question being whose fault was it that the boiler exploded? *It was held* that in the probability that a boiler, which had been under the control of the appellant for about four and a half years, would not have exploded if reasonable care as to its condition and management had been exercised, there is such a basis for imputing the explosion to the fault or negligence of the appellant, that a decision of the case in favor of appellee upon that ground, is not to be disturbed.

**Memorandum.**—Chancery proceedings. In the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding. Bill to off-set expenses for repairs upon leasehold property against the rents; hearing and decree for defendants; appeal by complainants. Heard in this court at the March term, A. D. 1893, and affirmed. Opinion filed May 24, 1893.

### STATEMENT OF THE CASE.

The John Morris Company, the tenant of John H. South-worth, of Springfield, Massachusetts, of a building in the city of Chicago, was engaged in the business of printers, lithographers, bookbinders, stationers, etc., the establishment occupying the entire structure, 40 feet wide by 186 feet long, and five stories high.

In the afternoon of the 10th day of January, 1890, between three and four o'clock, one of the two boilers ruptured, causing an explosion, blowing out the basement and first stories of the rear of the building, which were of glass between columns supporting the superstructure, leaving the building without heat or power or protection against the wind and elements, putting an end to all business operations and requiring repairs to the property which cost $9,527.86. The company repaired the building and withheld the accruing rent until it equaled the cost of the repairs, and then filed a bill to set one off against the other.

### APPELLANT'S BRIEF, FLOWER, SMITH & MUSGRAVE, ATTORNEYS.

It is the duty of the court, first to construe an instrument (the lease in this case) so as to give effect to all the language used by the parties; and, secondly, so to construe an instrument (the lease) as to give effect to the intent of the parties to it.

The full operation of the last clause of the lease, providing that in case the premises should be rendered untenantable by fire, or other casualty, the landlord should have the option to terminate the lease, or to repair in thirty days, or in case of his failure so to do, that the lease should be thereby terminated, is entirely consistent with the other clauses of the lease, and simply amounts to a proviso in case the premises, by fire or other casualty, should be rendered untenantable. 2 Parsons on Contracts, 516 and 517; 3 Am. and Eng. Ency. 868 (right hand column); Bolman v. Lohman, 79 Ala. 63; Bent v. Alexander. 15 Mo. App. 181; Wood, Landlord and Tenant, Vol. 1, Sec. 303; McCarty v. Howell, 24 Ill. 341

(343); Walker v. Tucker, 70 Ill. 527 (537); Galena Ins. Co. v. Kupfer, 28 Ill. 332 (336); Packer v. Roberts, 140 Ill. 9 (15–17).

The rupture of this boiler was a casualty within the meaning of the lease.

Webster defines casualty as " That which comes without design or without being foreseen; misfortune occasioned by an accident."

American and English Encyclopedia defines casualty as " Accident; that which comes by chance, or without design, or without being foreseen."

Waldeck v. Springfield Ins. Co., 56 Wis. 96, exhibits an insurance policy in which a boiler explosion is explicitly called a casualty.

In Kelly v. Duffy (Pa.), 11 Atlantic Rep. 244, a fire for which the tenant was not responsible, occurring while the premises were occupied by the tenant, was held to be an " inevitable casualty." See also Hodgson v. Dexter, 1 Cranch C. C. 109; Philips v. Son, etc., Co., 10 R. I. 458.

The casualty in question rendered the premises untenantable.

Webster defines tenantable as " Fit to be rented; in a state of repairs suitable for a tenant."

In Kip v. Merwin, 52 N. Y. 542, it is held that occupation of the premises after they were rendered untenantable, by a tenant, was not conclusive evidence that the premises were tenantable.

See also, bearing upon the question, Suydam v. Jackson, 54 N. Y. 450; Tallman v. Murphy, 120 N. Y. 345.

APPELLEE'S BRIEF, HUTCHINSON & LUFF AND ULLMAN & HACKER, ATTORNEYS.

Under the covenants of the lease the appellant was bound to repair all damages to the building from any cause excepting fire, cyclone or the falling of the building from a cause other than its own fault or negligence. 1 Wood's L. & T., Secs. 367–370; 2 Platt's Law of Leases, 186; Phillips v. Stevens, 16 Mass. 238.

The lease being sealed, appellant could only be released from its obligation by a contract under seal. Barnett v. Barnes, 73 Ill. 216; Loach v. Farnum, 90 Ill. 368.

The letter of Charles H. Southworth was not an acceptance of appellant's telegram. To make a contract by letter there must be an unqualified acceptance of the terms proposed. 1 Parsons on Contracts, 475, 477.

In order to bind the principal, an act done under an authority must be done in the name of the person who gives the power, and not in the agent's name. Dunlap's Paley on Agency, 180; Townsend v. Hubbard, 4 Hill, 351; Clark's Lessees v. Courtney, 5 Pet. 319.

The explosion in question was not a casualty. A casualty is an act of God or the public enemy. A freshet, cyclone, lightning or an earthquake may cause a casualty. 1 Bouvier's Law Dic., 246; Story on Bailments, Secs. 29, 240.

The explosion of the boiler was *prima facie* evidence of the negligence of appellant. Ill. Cent. R. R. Co. v. Phillips, 49 Ill. 234, and 55 Ill. 194; John Morris Co. v. Burgess, 44 Ill. App. 27.

OPINION OF THE COURT, GARY, P. J.

The only appellees having any interest are Charles H. and Edward C. Southworth, executors of John H. Southworth, deceased, who by a lease under seal dated November 14, 1887, demised to the appellant a large store in Chicago for a term beginning April 1, 1889, and ending March 31, 1892.

The company was the occupant of the premises before the lease was made, and so continued until it took effect, and thereafter. The lease contained covenants by the company to pay all repairs to the building, ordinary and extraordinary, to keep the premises in good repair, and upon the termination of the lease in any way to yield up the premises in good condition and repair, loss by fire, and ordinary wear excepted, but that the company should not be required to repair loss or damage by fire unless such loss or damage should be caused by its fault or negligence, nor

any loss or damage by reason of a cyclone, or the falling of the building from any cause other than the fault or negligence of the company.

The lease also provided that, in case of loss by fire so as to render the premises untenantable, the lease might be terminated by either party, unless it was mutually agreed to repair, and the same could be done in reasonable time so as to not utterly prevent the business from being prosecuted. Also, that in case the premises should be rendered untenantable by fire or other casualty, the lessor might, at his option, terminate the lease or repair them within thirty days.

January 10, 1890, a steam boiler in the premises exploded, injuring them to an extent requiring an expense of nearly $10,000 to repair.

The second day after the explosion the company sent a telegram to the deceased, to inform him that the building had been damaged, and saying: "Will restore building at cheapest cost and charge to your account." The appellee, Charles, replied: "Father is not able to attend to this business, so please arrange to have done the necessary repairs to restore building to its former condition."

The authority of Charles to bind his father is one of the points in dispute. Another is, why the boiler exploded.

We do not find it necessary to determine the effect of the correspondence in evidence, nor to decide whether the provision relied upon by the appellant as to the premises having become untenantable applies to this case.

The court below seems to have been of the opinion that Charles had no authority to bind his father, and rested upon that. But in the mass of contradictory testimony put in as to the conduct of the engineer in charge of the boilers, as to the neglected condition of connecting apparatus which could be detected notwithstanding the explosion, as to the quality of the boiler itself, and in the probability that a boiler which had been under the control of the appellant for about four and a half years, would not have exploded if reasonable care as to its condition and

management had been exercised, there is such a basis for imputing the explosion to the fault or negligence of the appellant, that a decision of the case in favor of appellees upon that ground, is not to be disturbed. *Res ipsa loquitur* is a saying applicable to a great variety of circumstances. 2 Thompson on Negligence, 1220.

This court applied it to this very explosion in the case of this appellant v. Burgess, 44 Ill. App. 27.

If the explosion was the result of the fault or negligence of the appellant, a very explicit agreement would be necessary to entitle it to charge the deceased, or his estate, with the cost of the repairs.

The appellant withheld the accruing rent until it equaled that cost, and then filed a bill to set off one against the other. We understand that the parties desire to present only the one question, "who shall pay for these repairs?"

Being of the opinion that the Superior Court rightly decided it in favor of the appellees, we affirm the decree.